UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
FRED IFILL

                                                      **Docket No.: 07-CV-7472**

                            Plaintiff,

                     -against-


NEW YORK STATE COURT OFFICERS
ASSOCIATION, ASSOCIATION PRESIDENT
DENNIS QUIRK in his individual and official
capacity, MICHAEL P. DeMARCO, in his
individual and official capacities, and JOHN
POSILLIPO, in his individual and official
capacities,


                            Defendants.
------------------------------------------------------X



**PLAINTIFF'S _JOINT REPLY_ MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**




                                      LAW OFFICES OF FREDERICK K.
                                      BREWINGTON
By:    Attorneys for the Plaintiff
        50 Clinton Street, Suite 501
        Hempstead, NY 11550
        (516) 489-6959 *phone*
        (516) 489-6958 *facsimile*



Of Counsel:
Frederick K. Brewington (FB5925)
Gregory Calliste, Jr. (GC8140)

# TABLE OF CONTENTS

**Page**

**TABLE OF CASES** ..................................................... **ii**

**PRELIMINARY STATEMENT.** ..................................................... 1

**POINT I**
**DEFENDANTS' SECRETED ACTIONS AGAINST**
**MR. IFILL DID NOT ENTITLE MR. IFILL TO AN**
**ARTICLE 78 PROCEEDING AND MR. IFILL DID**
**NOT HAVE A POST-DEPRIVATION REMEDY** ..................................... **4**

**POINT II**
**DEFENDANTS DeMARCO AND POSSILIPO WERE**
**PERSONALLY INVOLVED IN THE VIOLATIONS**
**HEREIN & ARE NOT ENTITLED TO QUALIFIED**
**IMMUNITY** .................................................................. 6

**POINT III**
**PLAINTIFF'S BREACH OF DUTY OF FAIR**
**REPRESENTATION CLAIM AGAINST UNION**
**DEFENDANTS IS PROPERLY BEFORE THIS**
**COURT AND SHOULD SURVIVE DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT** ........................................... 9

**POINT VI**
**THE INDIVIDUAL DEFENDANTS CAN BE**
**HELD LIABLE FOR BREACH OF CONTRACT/**
**COLLECTIVE BARGAINING AGREEMENT.** ..................................... 11

A.  The Individual Defendants, Can Be Held
    Liable For Their Willful and Intentional
    Actions Herein............................................................. 11

**CONCLUSION.** ............................................................. 13

i

## **TABLE OF CASES**

## **FEDERAL *AND* STATE CASES**

**CASE NAME**                                                                 **PAGE NO.**

*Brawer v. Carter*, 937 F.Supp. 1071, 1082 (S.D.N.Y.1996)...................................7

*Brignoni v. Abrahamson*, 278 A.D.2d 565, 718 N.Y.S.2d 416
(N.Y.A.D.,2000). ......................................................................9, 11

*Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 106
(2d Cir.  2003)......................................................................7, 8

*Duane Reade, Inc. v. Local 338 Retail, Wholesale Dept.*
*Store Union*, 3 Misc.3d 405, 777 N.Y.S.2d 231(N.Y.Sup.,2003)............................12

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).......................................7

*Jean-Laurent v. Wilkinson*, 540 F.Supp.2d 501 (S.D.N.Y.,2008)..........................7

*Jones v. Parmley*, 465 F.3d 46(2nd Cir. 2006)........................................11

*Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir.1995)...................................
9

*Matter of Obot v New York State Dept. of Correctional Servs.*,
256 AD2d 1089.........................................................................9

*Martin v. Curran*, 303 N.Y. 276 (N.Y. 1951)..........................................12

*McEvoy v. Spencer*, 124 F.3d 92, 97 (2d Cir. 1997)....................................7

*Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir.1994)....................................9

*Piniewski v. Panepinto*, 267 A.D.2d 1087, 1088, 701
N.Y.S.2d 215 (4th Dept.1999)..........................................................12

*Rivera v. United States*, 928 F.2d 592, 607 (2d Cir.1991)..............................7

 *Salemeh v. Toussaint*, NYLJ, July 7, 2003, p. 19, col. 1
(Sup.Ct., N.Y.Co., 7/7/03) ............................................................12

*Saucier v. Katz*, 533 U.S. 194, 201 (2001)...........................................7

*Smith v. P.O. Canine Dog Chas*, 2004 WL 2202564 at 14
(SDNY 2004)...........................................................................9

*Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir.1999)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .** 9

*Walsh v. Torres-Lynch*, 266 A.D.2d 817, 697 N.Y.S.2d 434 (4th Dept.1999) **. . . . . . . . . . . . . . . . . .** 12

## <u>STATUTES</u>

42 U.S.C § 1983.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

Civil Service Law § 209. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

CPLR § 205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## PRELIMINARY STATEMENT

Plaintiff provides the instant (Extended) Joint Reply Affirmation (**with permission from the Court**) in response to the Collective Defendants' affirmations in opposition to Plaintiff's motion for summary judgment. For the reasons briefly stated below, as well as in Plaintiff's affirmation in opposition to Defendants' motion for summary judgment, dated April 1, 2008, Plaintiff reasserts that summary judgment is proper in favor of Plaintiff. Though Defendants purport to raise issues of fact in the opposition papers, said issues of fact are immaterial to the fact that Plaintiff, as a union member, was entitled to certain procedures, privileges, rights, and entitlements. Further, the issues of fact raised by Defendants are immaterial to the fact that Defendants herein deprived Plaintiff of the procedures, privileges, and rights, to which Plaintiff was entitled as a member of the Defendant Court Officers Association (union).  Indeed, based upon the admissions of the Defendants during discovery, and now in their affirmations in opposition to Plaintiff's motion for summary judgment, Plaintiff's entitlement to summary judgment against the collective Defendants is clear.

First, it is important to note that each Defendant - in their respective motions for summary judgment and in their memorandums in opposition to Plaintiff's motion - supply to Court with diametrically-opposed renditions of the material facts related to this matter. More specifically, Defendants dedicate much of their memorandums and exhibits (which includes video footage of the juvenile prisoner incident), arguing that Mr. Ifill was guilty of some type of misconduct. Defendants then go further to state that their actions, including the confiscation of Mr. Ifill's firearms, their secret meeting regarding the fate of Mr Ifill's employment, and the ultimatum that the Collective Defendants thrusted upon Mr. Ifill were all contemplated and effected by Collective Defendants because **they believed** that Mr. Ifill's actions warranted disciplinary action against Mr. Ifill. Of course, Defendants determination was made without authority, a hearing, or without Mr. Ifill being afforded an opportunity to defend himself. In this regard,

1

Defendants assert that Mr. Ifill should have challenged these unconstitutional actions in an Article 78 proceeding.

In the same breath, Collective Defendants agree that Mr. Ifill was never formally charged with misconduct. Indeed, the Inspector General, who Defendants claim has the sole authority to investigate and recommend disciplinary charges, **were not even notified about the alleged juvenile inmate abuse incident _until after_ Mr. Ifill was forced to resign and sought reinstatement**. However, Defendants then go further to state that because Mr. Ifill was not formally charged with misconduct, and no formal charges were contemplated by the Inspector General at that time, Mr. Ifill was not entitled to the protections of Article 24 of the Collective Bargaining agreement. But then, to compound their conflicting positions, Defendant agree that Mr, Ifill was not entitled to certain protections afforded to him under the Collective Bargaining Agreement ("CBA") - namely Article 24 of the CBA - because Mr. Ifill was never charged with misconduct and Mr. Ifill *allegedly* resigned before the procedures delineated in Article 24could take effect.

Though Defendants all state - now - that they had no authority to institute disciplinary actions against Mr. Ifill, this in inconsistent with the affirmative actions they each took collectively and individually against Mr. Ifill prior to Mr. Ifill's forced resignation. If Defendants had no such authority, then why did they hold secret meetings about discipline and potential discipline of Mr. Ifill? Why discuss and threaten criminal actions and complaints against Mr. Ifill? Why confiscate Mr. Ifill's guns if their were no charges? Why did Defendants go through the trouble of fashioning an ultimatum for Mr. Ifill? Why prepare a letter of resignation for Mr. Ifill to sign? Why force Mr. Ifill to resign, especially when the Inspector General (whom Defendants claim has the sole authority to conduct an investigation and recommend disciplinary action) had no knowledge of the incident - at all - at the time that this secret ultimatum was given to Mr. Ifill?

Surely, Defendants cannot have it both ways. Either Mr. Ifill was given an ultimatum and coerced to resign *(1) prematurely when there were no charges against Mr. Ifill; (2) without authority, and (3) in secret*, which would entitle Mr. Ifill to summary judgment because Defendants' conspiracy to deprive Mr. Ifill of his protections under the Collective Bargaining Agreement would then be obvious, clear, and (admittedly) without legal basis. Or, the **_only other alternative_** is that the Collective Defendants subjected Mr. Ifill to the above-described improper actions, while acting under the color of state law, because there were some sort of disciplinary charges or proceedings being contemplated and/or being instituted against Mr. Ifill. If this is the case, then Mr. Ifill would still be entitled to summary judgment against Collective Defendants because Defendants' secreted actions violated the collective bargaining agreement. For the sake of brevity, Mr. Ifill respectfully refers the Court to Point I(A) of his memorandum in support of his instant motion for summary judgment.

Despite Defendants' attempts alter the meaning of the clear language of the Collective Bargaining Agreement ("CBA") for the purposes of *this* legal action, Article 24 of the Collective Bargaining agreement is clear on its face. (*Exhibit O*, Collective Bargaining Agreement, p.60). According to Article 24 of the CBA, even if Mr. Ifill was not formally charged with discipline, and disciplinary action was merely being contemplated or proposed (as Defendants posture in their memorandums), the CBA specifies that certain procedures **_must_** take place. (*Id*.; *see also* Plaint. Memo, Point I[A]). Again, from the outset, Defendants summarily and secretly determined that Mr. Ifill was guilty, devised their "generous offer" - which was not even allowed by the CBA; and refused to allow Mr. Ifill an option to elect a valid "alternative disciplinary procedure" "in writing" "within ten days" as the CBA instructs *Id*. (*Exhibit O*, Collective Bargaining Agreement, p.60). Indeed, Defendants' "generous offer" was supposed to be in writing, according to the CBA. *Id*. However, Defendants could not even supply any written evidence to this Court that any such offer was ever conveyed to Mr. Ifill - as mandated by the CBA. Why?

3

Because Defendants' actions were obviously intended to be kept secret and Defendant had no interest in allowing the "Article 24 process" to proceed.

Moreover, the CBA instructs that "an officer or employee who elects to follow the alternative disciplinary procedure shall meet with the designee of the Deputy Chief Administrative Judge (New York City Courts) who shall recommend a penalty after reviewing the relevant facts which form the basis of discipline, the employment history of the employee enlisted on the Initiation of Discipline form and any facts or arguments submitted in defense or mitigation**."** (*Exhibit O*, Collective Bargaining Agreement, p.60). Mr. Ifill was never even contacted by anyone from the Deputy Chief Administrative Judge's Office regarding any aspect of this "generous offer." In fact, the evidence demonstrates that the offer was conveyed to Mr. Ifill by Defendant Quirk - who is not an even an active employee of the Unified Court System or a person with authority (under the CBA) to convey such an offer. The evidence also demonstrates that the Chief Administrative Judge's office declined to discuss anything with Mr. Ifill despite his numerous requests. But, according to Defendants' memorandums, the Chief Judge's office had no duty to discuss anything with Mr Ifill because Mr. Ifill was no longer employed with the Unified Courts. Of course, this is because Defendants concerted action caused Mr. Ifill to no longer be employed at that time.

Based upon the above and the arguments as outlined in Plaintiff's memorandum in support of summary judgment, Mr. Ifill is entitled to summary judgment against Defendants regardless of the scenario that the Court adopts as true (i.e. whether the Court believes that Mr. Ifill was forced to resign, or that Mr. Ifill voluntarily resigned after receiving Defendants' unauthorized secret offer).

## POINT I
## DEFENDANTS' SECRETED ACTIONS AGAINST MR. IFILL DID NOT ENTITLE MR. IFILL TO AN ARTICLE 78 PROCEEDING AND MR. IFILL DID NOT HAVE A POST-DEPRIVATION REMEDY

Defendants assert that Mr. Ifill's claim fails because he did not bring an article 78 proceeding

to challenge the Unified Court System's denial of his reinstatement request (Def. Quirk Memo. pp. 5-6). Defendants claim the New York State's Article 78 procedure afforded Mr. Ifill an adequate post-deprivation remedy. However, Defendants are attempting to mislead the Court and/or draw the Court's attention away from the fact that there was no disciplinary action, or any other official conduct by Defendants regarding their "under the table" efforts to force Mr. Ifill to resign, which could be properly challenged in an Article 78 proceeding.

According to Defendant Posillipo, all decisions concerning referrals of matters to the inspector general or the district attorney ***are made by central administration***. *Id* at 10. Defendants Posillipo, DeMarco and Quirk were not members of administration. Further, according to Defendants, none of the Defendants herein possessed "the authority to refer matter[s]" to the inspector general or the district attorney." (Def. DeMarco and Posillipo Memo. p. 22). Nevertheless, Defendants represented to Mr. Ifill that they had such authority. (*See* above statement of facts). Indeed, even though Defendant Quirk had no such authority to make determinations regarding the Unified Court System's employees, Defendant Quirk was sure to ***assure*** Mr. Ifill, on many occasions, that he would be fired, arrested, and/or that Mr. Ifill would not be reinstated - as if Defendant Quirk had such knowledge and/or authority. *Id*. At all times, Defendants represented to Mr. Ifill that they had such authority. Clearly, Mr. Ifill relied on Defendants' collective misrepresentations because Defendants were able to coerce and force Mr. Ifill to resign, among other things.

However, taking the Defendants' assertions as true, Defendants Posillipo, DeMarco, and Quirk had no authority to institute disciplinary actions of any kind, and ***there were never any actions taken against Mr. Ifill by persons of authority which Mr. Ifill could later challenge in an Article 78 proceeding.*** Everything that Defendants did to Mr. Ifill to force him to resign, was done in secret, under the table, with improper motives and without authority. Mr. Ifill was forced to resign and the matter was

5

not even referred to, or known by, the Inspector General's Office - according to Defendant Quirk (*See* above statement of facts). There was never any formal, official, or even contemplated disciplinary action taken against Mr Ifill by the Unified Court System at the time of the events at issue herein. Therefore, under the existing rules, even if Mr. Ifill could challenge the refusal to reinstate issue with an Article 78 petition, what official action(s) and/or decision(s) regarding Mr. Ifill's forced secret resignation would Mr. Ifill be able to challenge in an Article 78 proceeding? (*See* above statement of facts)

Indeed, following Mr. Ifill's resignation, when it was too late for reinstatement and when Defendants' misdeeds were already completed, Defendant Quirk admits that he submitted letters to the Unified Court System on Mr. Ifill's behalf and gave Mr. Ifill advice on how to attempt to be reinstated. During this time, Defendant Quirk gave Mr. Ifill every reason to believe that he supported Mr. Ifill's reinstatement. *Id*. Furthermore, it was not until discovery was conducted during the instant Federal matter, that Mr. Ifill actually discovered Defendants' conspiratorial efforts against him. This was the very reason that Mr. Ifill elected to Amend his Complaint after the close of discovery to include the allegations of conspiracy in violation of section 1983. How could Mr. Ifill challenge Defendants' conspiratorial efforts in an Article 78 proceeding when Mr. Ifill only recently discovered same? Here, it is this conspiratorial effort on the part of Collective Defendants, to force Mr. Ifill to resign, that is the subject of Mr. Ifill's instant Section 1983 claim - not just the Unified Court System's subsequent (discretionary) refusal to reinstate Mr. Ifill after the fact.

### POINT II
### DEFENDANTS DeMARCO AND POSSILIPO WERE PERSONALLY INVOLVED IN THE VIOLATIONS HEREIN & ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Defendants DeMarco and Possilipo assert that summary judgment is proper against Plaintiff because they were not personally involved in the resignation of Mr. Ifill and are entitled to qualified immunity for their intentional conspiratorial actions. Plaintiff disagrees. A surface review of Plaintiff's

statement of facts reveals that Defendants DeMarco and Possilipo were actively involved in Mr. Ifill's forced resignation (*see* statement of facts). For the reasons stated below, Defendants DeMarco's and Possilipo's actions herein cannot be shielded by qualified immunity.

Qualified immunity "shields governmental agents 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McEvoy v. Spencer*, 124 F.3d 92, 97 (2d Cir. 1997) ( *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When addressing claims of qualified immunity, courts first focus on the issue of whether the constitutional right that was violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Assuming the facts establish the violation of a clearly established constitutional right, Defendants would still be entitled to qualified immunity if their actions were objectively reasonable "in light of the legal rules that were clearly established at the time." *Anderson v. Creighton*, 483 U.S. shows that (1) the asserted right was not clearly established, or (2) it was nonetheless objectively reasonable for the official to believe the conduct did not violate it. *Jean-Laurent v. Wilkinson*, 540 F.Supp.2d 501 (S.D.N.Y.,2008).

In order to assess whether the actions of Defendants were objectively reasonable, the Court examines the information they possessed at the time of their actions "without consideration of [their] subjective intent**.**" *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 106 (2d Cir.  2003). Where, however, the objective reasonableness of an officer's actions depends on disputed facts, summary judgment based on qualified immunity is properly denied. *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir.1991); *Brawer v. Carter*, 937 F.Supp. 1071, 1082 (S.D.N.Y.1996).

Plaintiff incorporates by reference, the arguments set-forth in Point I(A) of his memorandum. In addition to said facts, in the instant matter, it is beyond dispute that Defendants DeMarco and Posillipo were aware that Mr. Ifill had certain rights afforded to him as a union member and employee of OCA.

7

Indeed, Defendant Posillipo testified "that members are entitled to seek the union when **they may be subject** disciplinary proceedings" [*emphasis ours*] (*Exhibit C*. Posillipo Deop. 21-25). Defendant Posillipo, himself, being subject to prior disciplinary matter, knew that union representation was all-important under those circumstances. *Id*. Likewise, Defendant DeMarco recalled a job-related incident wherein he was summoned to a meeting with OCA regarding a potential disciplinary matter. (*Exhibit D*. DeMarco Depo. 18-19). On that occasion, Defendant DeMarco outright refused to meet with his superiors "because [he] chose to have union representation, and [he] was told that would not be allowed." (*Id* at 19:7). As the matter at issue related to the collective bargaining agreement, Defendant DeMarco knew that he had certain rights under the collective bargaining agreement.  Though Defendants were aware that they personally had these rights as union members, they nevertheless unreasonably sought to insure that Mr. Ifill could not benefit from these same rights.

Therefore, Defendants could not have thought that their actions, in conspiring to essentially terminate Mr. Ifill without the protections due to Mr. Ifill, were objectively reasonable. *Infra*. If the Court examines the information Defendants "possessed at the time of their actions without consideration of [their] subjective intent" *(Connecticut ex rel. Blumenthal v. Crotty*, supra), it should be clear to the Court that Defendants possessed knowledge that Mr. Ifill was entitled to proper procedures under the Collective Bargaining agreement. Mr. Ifill should not have been threatened and intimidated and forced to resign, without due process, by his employer and union. Further, based upon the above statement of facts as well as the arguments posed in Point I above, Defendant actions, in conspiring with the Union to force Plaintiff to resign without process, was grossly unreasonable and contrary to Mr. Ifill's right to continued employment. For this reason, Mr. Ifill is entitled to summary judgment against the collective defendants.

At the very least, issues of fact exist as to whether qualified immunity applies herein. When the availability of qualified immunity turns on the disputed underlying material facts, not on the

reasonableness of actions taken in undisputed factual circumstances, "jury consideration is normally required." *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir.1994); cf. *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir.1995). Likewise, where it is "impossible to determine whether the officers reasonably believed that their [actions were reasonable because] several material facts are still in dispute ... summary judgment on the basis of qualified immunity is precluded," *Smith v. P.O. Canine Dog Chas*, 2004 WL 2202564 at 14(SDNY 2004); citing, *Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir.1999). "The record plainly reveals the existence of genuine issues of material fact relating to the qualified immunity defense." *Jones v. Parmley*, 465 F.3d 46(2nd Cir. 2006).

**POINT III**
**PLAINTIFF'S BREACH OF DUTY OF FAIR REPRESENTATION CLAIM AGAINST UNION DEFENDANTS IS PROPERLY BEFORE THIS COURT AND SHOULD SURVIVE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**A.      Plaintiff's Action Under § 209-a Of The Civil Service Law Is Timely:**

"When an employee brings an action or proceeding against his employer or employee organization alleging, inter alia, that the employee organization breached its duty of fair representation to the employee, the proceeding must be commenced either within four months after the breach was discovered or within four months after the petitioner suffered actual harm, ***whichever is later***" *Brignoni v. Abrahamson*, 278 A.D.2d 565, 718 N.Y.S.2d 416 (N.Y.A.D.,2000); *citing, CPLR* 217 [2]; *Matter of Obot v New York State Dept. of Correctional Servs.*, 256 AD2d 1089.

Following Mr. Ifill's forced resignation on December 27, 2006, Mr. Ifill timely filed an improper practice charge against Defendant NYSCOA, Dennis Quirk and the Unified Court System (*See* Def. Possilipo and DeMarco *Exhibit Q*).

At all times prior to Mr. Ifill's filing of his PERB complaint, Mr. Ifill was actively attempting to seek reinstatement (from December 29, 2006 [*Exhibit J*] to February 21, 2007 (Def. DeMarco/Possillipo [*Exhibit P*]). During this time, Mr. Ifill submits, and Defendant Quirk admits, that Defendant Quirk

9

promised Mr. Ifill that he would assist Mr. Ifill to seek reinstatement (*See, Exhibit A*, Ifill Depo. 80:6).

During this time, Defendant Quirk provided Mr. Ifill with instructions on how to seek reinstatement

(*Exhibit B,* Quirk Depo. 19 - 23; *Exhibit A*, Ifill Depo. 81:14). Defendant Quirk also submitted Mr. Ifill's

application to USC/OCA with a letter in support of Mr. Ifill's reinstatement (*Exhibit L*, Ifill application

for reinstatement; *Exhibit B*, Quirk Depo. 301:16-19). At all times, Defendant Quirk made it appear as

though he was actively assisting Mr. Ifill. *Id*. Mr. Ifill believed Defendant Quirk's statement to be true

and did exactly as Defendant Quirk advised. *Id*. Mr. Ifill's application for reinstatement was denied by

letter dated February 21, 2007.

Interestingly, Defendants failed to advise the Court that Mr. Ifill appealed OCA's determination

to deny his application for reinstatement by letter, dated April 10, 2007 (*Exhibit U*). The reason that Mr,.

Ifill appealed the determination, was because the decision not to reinstate Mr. Ifill was made without

providing Mr. Ifill with a reason for the denial. In any event, by letter dated June 26, 2007, Mr. Ifill

received a letter from Counsel for OCA denying Mr. Ifill's reinstatement again without explanation.

(*Exhibit V*).

The charge was timely received by PERB on March 5, 2007. *Id*. At that time, Mr. Ifill's

application was still being considered by OCA and was not finally determined until October 26, 2007

(*See, Exhibit V*). During an appearance before PERB, which took place shortly thereafter, Plaintiff

appeared *pro-se*. *Infra*. Following this conference, Mr. Ifill indicated that he did not want to proceed

because - after hearing Defendant Quirk made wrongful and derogatory comments about Mr. Ifill and his

lifestyle - Plaintiff realized that Defendant Quirk harbored animus toward Mr. Ifill and never intended

to assist Mr. Ifill in good faith. *Id*. Consequently, Mr. Ifill determined that this was a matter that should

be addressed in Federal Court because Defendants' conduct before PERB raised federal question issues.

(*Exhibit F*, Josey Depo. 64). Mr. Ifill advised PERB that he intended to bring this matter in Federal Court.

10

*Id*. Mr Ifill then attempted to withdraw his administrative complaint that was filed with PERB (*See,* Def. DeMarco and Possilipo, *Exhibits S and U*). Mr. Ifill also immediately filed a Complaint in Federal Court as a *pro-se* Plaintiff on August 23, 2007. Unbeknownst to Mr. Ifill, the matter before PERB was not dismissed until October 18, 2007 - over two (2) months after Mr. Ifill filed his *pro-se* federal Complaint in this matter. *Id*. In his federal Complaint, Mr. Ifill asserted violations of *Civil Service Law* § 209-a, among other things.

In addition to advising PERB that he wanted to pursue the matter in federal court, the fact that *Pro Se Plaintiff* Mr. Ifill asserted his section 209-a cause of action in his federal complaint, which was filed months before PERB dismissed Mr. Ifill's PERB complaint, demonstrates that Mr. Ifill did not intend to abandon this claim. Instead, Mr. Ifill chose to purse the claim in a different forum. Pursuant to *CPLR § 205*, Mr. Ifill had six months following his withdrawal of his PERB charge to file a cause of action in under Civil Service Law § 209-a. *See CPLR § 205*. Further, the action before PERB was timely commenced. Indeed, Mr. Ifill's initial PERB complaint was premature because Mr. Ifill's application for reinstatement (and/or the appeal thereto) was still pending as of June 26, 2007. Because OCA's decision regarding Mr. Ifill's appeal was made on June 26, 2007, the "actual harm" was not realized until June 26, 2007 when Mr, Ifill's appeal  was decided. As the rule allows for the statute of limitations to begin "within four months after the petitioner suffered actual harm, whichever is later" *(Brignoni v. Abrahamson*, supra), the four-month statute of limitations for actions under Civil Service Law § 209 expired on October 26, 2007 - four months after Mr. Ifill learned of OCA's final determination of his application (*See Exhibit V*).

## POINT VI
### THE INDIVIDUAL DEFENDANTS CAN BE HELD LIABLE FOR BREACH OF CONTRACT/COLLECTIVE BARGAINING AGREEMENT.

**A.     The Individual Defendants, Can Be Held Liable For Their Willful**

11

**and Intentional Actions Herein:**

On page 22 of his memorandum, Defendant Quirk asserts that he cannot be held personally or individual liable for breach of duty of fair representation (*See* Def. NYSCOA memo, p. 22). Plaintiff disagrees. Further, the case-law cited by Defendants in support of this assertion actually lends support to the fact that the individual Defendants can - in fact - be held individually liable for their actions herein. (*See Duane Reade, Inc. v. Local 338 Retail*, *Wholesale Dept. Store Union*, 3 Misc.3d 405, 777 N.Y.S.2d 231(N.Y.Sup.,2003).

"Suits against association officers, whether for breaches of agreements or for tortious wrongs, [are limited] to cases where the individual liability of every single member can be alleged and proven." *Id. citing, Martin v. Curran*, 303 N.Y. 276 (N.Y. 1951). As long as evidence exists "that the individual members of the union had authorized or ratified the tortious conduct at issue," an action can be maintained against that individual. *Id. citing, Martin, see also Salemeh v. Toussaint*, NYLJ, July 7, 2003, p. 19, col. 1 (Sup.Ct., N.Y.Co., 7/7/03) (actions against union for "tortious wrongs" are limited to "cases where the individual liability of every single member can be alleged and proven"); *Piniewski v. Panepinto*, 267 A.D.2d 1087, 1088, 701 N.Y.S.2d 215 (4th Dept.1999) (assault claim against union dismissed because Complaint "fails to allege that the individual [union] members authorized or ratified the assault"); *Walsh v. Torres-Lynch*, 266 A.D.2d 817, 697 N.Y.S.2d 434 (4th Dept.1999) (breach of duty of fair representation claim against union dismissed for plaintiff's failure to allege that each member of the union ratified or approved the acts constituting the alleged breach).

First, it is important to note that all of the individual Defendants were, admittedly, acting outside the scope of their respective authorities (*See above facts*). In the instant matter, again, Defendants readily admit that they possessed ***no authority*** to make any such decision concerning referrals of matters to the inspector general or the district attorney because such matters can only be done by administration.

Nevertheless, Defendants threatened Mr. Ifill with the above as if they had such authority. Further, Defendant Quirk was sure to *assure* Mr. Ifill, on many occasions, that he would be fired, arrested, and/or that Mr. Ifill would not be reinstated - as if Defendant Quirk had such knowledge, authority, and/or ability to determine what Mr. Ifill's employers (UCA) would do. *Id*. Nevertheless, Defendant Quirk had no such authority. Indeed, Defendant Quirk readily admits that Mr. Ifill "*was not entitled to union representation until disciplinary charges were filed*." (Def NYSCOA Memo p. 22). Defendants then proceed further in their memorandum stating that "the allegations had not yet been sent to the inspector general or district attorney for investigation." *Id*.   As for Plaintiff's attempt to be reinstated, Defendant Union states that Plaintiff was not "entitled to union representation after he resigned." *Id*. If Defendants above-assertions are taken as true, then Mr. Ifill was never entitled to union representation at any point during the resignation/reinstatement process.

Therefore, all of Defendant Quirk's actions in this matter were premature and/or unauthorized by the collective bargaining agreement and/or otherwise *outside of the scope* of the Union's duties - regardless of if such actions were ill-intended. Therefore, Union President Defendant Quirk was clearly acting individually and pursuant to interests outside the scope of the Union's authority. Moreover, Union President Defendant Quirk engaged the Defendant Union to act outside of the scope of its authority with respect to negotiating, forcing Mr. Ifill to resign, *AND* in forwarding Mr Ifill's reinstatement package to the Office of Court Administration. Because evidence exists "that the [Union's President Quirk] had authorized or ratified the tortious conduct at issue," an action can be maintained against that individual. *See, Martin v. Curran*, supra.

## CONCLUSION

Based upon the foregoing, summary judgment should be granted in favor of Plaintiff and the Defendants' Motions for summary judgment should be denied in their entireties.

Dated:  Hempstead, New York
      May 8, 2009                      Respectfully Submitted,

                                     _____/S/_____

By:    GREGORY CALLISTE, JR.(GC 8140)
       FREDERICK K. BREWINGTON (FB5925)
       *Attorneys for Plaintiffs*
       50 Clinton Street, Suite 501
       Hempstead, New York 11550
       (516) 489-6959